## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| HITRONS TECH, INC., <br><br> Plaintiff, <br><br> v. <br><br> BODYFRIEND USA, INC. NORTH AMERICA and BODYFRIEND USA, CO., LTD., <br><br> Defendants. | Case No. 2:24-cv-00039-EP-JRA <br><br><br> **ANSWER, SEPARATE DEFENSES, AND COUNTERCLAIMS** |

Defendant Bodyfriend USA, Inc., incorrectly styled as "Bodyfriend USA, Inc. North America" in the caption (hereinafter, "<u>Bodyfriend USA</u>" or "<u>Defendant</u>"), by way of Answer to the First Amended Complaint ("<u>Complaint</u>") filed by Plaintiff Hitrons Tech, Inc. ("<u>Hitrons</u>" or "<u>Plaintiff</u>"), hereby responds as follows:

### PARTIES

1.      Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

2.      Admitted.

3.      Admitted.

4.      Admitted.

5.      Bodyfriend USA admits that at one point in time there was a verbal agreement between it and Hitrons where Hitrons would purchase chairs for resale, that Bodyfriend USA would provide replacement parts as necessary for repairs, and that Hitrons was responsible for performing such repairs, but denies that this was the sole course of conduct between the Parties.

6.      Bodyfriend USA admits that its CEO Changjoo Kim sent a proposed written agreement to Hitrons and that Hitrons sent proposed comments as a counter-proposal as noted by

Plaintiff in paragraph 7.  Bodyfriend USA denies that Hitrons signed off on the agreement on the original terms proposed by Bodyfriend USA.

7.      Bodyfriend USA admits that Hitrons sent Bodyfriend USA its proposed revisions to the written agreement originally proposed by Bodyfriend USA, that Bodyfriend USA sent to Hitrons a written limited warranty, and that Serom Hong visited Bodyfriend USA to discuss their business relationship in or around November or December 2019.  Bodyfriend USA denies that the course and conduct of the parties continued per the parties' previous verbal agreement "until the events further detailed below."

8.      Admitted.

9.      Admitted.

10.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

11.     Denied.

12.     Denied.

13.     Denied.

14.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

15.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

16.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

17.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

18.     Denied.

19.     Denied.

20.     Bodyfriend USA is without sufficient knowledge or information to respond to this

paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

21.     Bodyfriend USA is without sufficient knowledge or information to respond to this

paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

## JURISDICTION AND VENUE

22.     This paragraph contains legal conclusions.  To the extent a response is required,

Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

23.     This paragraph contains legal conclusions.  To the extent a response is required,

Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

## COUNT ONE

## BREACH OF CONTRACT

24.     Bodyfriend USA repeats and re-alleges each of the foregoing responses to

Plaintiff's allegations as if fully set forth herein.

25.     Bodyfriend USA admits that it had a verbal contract to do business with Hitrons

and that Bodyfriend USA attempted to supplement this verbal contract with Hitrons with a written

agreement, but denies that either the terms of the written agreement dated September 4, 2019, or

those of Hitrons's proposed comments dated September 9, 2019 ultimately controlled the parties'

agreement.

26.     This paragraph contains legal conclusions.  To the extent a response is required,

Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

27.     This paragraph contains legal conclusions.  To the extent a response is required,

Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

28.   Denied.

29.   Denied.

30.   Denied.

31.   Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

## COUNT TWO

## BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING

32.   Bodyfriend USA repeats and re-alleges each of the foregoing responses to Plaintiff's allegations as if fully set forth herein.

33.   Admitted.

34.   This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

35.   This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

36.   This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

37.   This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

38.   This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

39.   Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

## COUNT THREE

## UNJUST ENRICHMENT

40.     Bodyfriend USA repeats and re-alleges each of the foregoing responses to Plaintiff's allegations as if fully set forth herein.

41.     This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

42.     This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

43.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

44.     This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

## COUNT FOUR

## DEFAMATION

45.     Bodyfriend USA repeats and re-alleges each of the foregoing responses to Plaintiff's allegations as if fully set forth herein.

46.     Denied.

47.     Denied.

48.     This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

49.     Denied.

50.     This paragraph contains legal conclusions.  To the extent a response is required, Bodyfriend USA denies the allegations and leaves Plaintiff to its proofs.

51.     Bodyfriend USA is without sufficient knowledge or information to respond to this paragraph of the Amended Complaint.  Plaintiff is left to its proofs.

**WHEREFORE**, Bodyfriend USA demands that the Amended Complaint be dismissed with prejudice, with attorneys' fees and costs awarded to Bodyfriend USA, and for such other and further relief as the Court deems equitable and just.

## <u>AFFIRMATIVE AND SEPARATE DEFENSES</u>

By asserting the following separate defenses, Bodyfriend USA does not allege or admit it has the burden of proof and/or the burden of persuasion with respect to any of these matters:

1.      The Amended Complaint fails to state a claim upon which relief can be granted.

2.      The Amended Complaint sets forth claims that are barred by their respectively applicable statutes of limitations.

3.      Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, or limited by, the terms of the applicable agreements by and among the parties.

4.      Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, because any loss was caused, in whole or in part, by Plaintiff's own wrongful conduct, breaches of the applicable agreements, violation of New Jersey law, and/or its poor business practices, for which Bodyfriend USA is not responsible.

5.      Plaintiff breached the terms and provisions of the applicable agreements, absolving and excusing Bodyfriend USA of any obligations or performance thereunder.

6.      Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, to the extent that Plaintiff failed to mitigate damages.

7.      Plaintiff failed to allege a compensable loss.

8.      Bodyfriend USA's conduct was not the proximate cause of any alleged damages at issue.

9.      The conduct of Plaintiff was the sole proximate cause or a proximate contributing cause of damages, if any, for which Plaintiff complains.

10.     Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, by the doctrines of waiver and estoppel.

11.     At all times relevant hereto, Bodyfriend USA complied with the parties' applicable agreements.

12.     Plaintiff violated and breached the implied covenants of good faith and fair dealing contained in its respective agreements with Bodyfriend USA.

13.     At all relevant times, Bodyfriend USA acted in good faith.  Plaintiff acted in bad faith and in retaliation for Bodyfriend USA exercising its rights.

14.     At all relevant times, Bodyfriend USA did not engage in any wrongful and/or unlawful conduct.

15.     The Complaint is barred by the doctrine of avoidable consequences.

16.     Plaintiff did not suffer any damages.

17.     Plaintiff's breach of its contractual agreements with Bodyfriend USA excuses any alleged non-performance on Bodyfriend USA's part.

18.     Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, by the doctrine of laches.

19.     Plaintiff's alleged claims and damages, if any, are barred, in whole or in part, by the doctrine of unclean hands and/or prior breach.

20.     Bodyfriend USA reserves the right to amend its Answer to the Amended Complaint to assert additional defenses, counterclaims and/or supplement, alter or change this response upon discovery of the specific facts upon which Plaintiff bases its claims for relief, the discovery of additional facts, and upon completion of further discovery.

Dated: June 14, 2024

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Attorneys for Defendant, Bodyfriend USA


*/s/J. John Kim*
_____

**J. John Kim**
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| HITRONS TECH, INC., | Case No. 2:24-cv-00039-EP-JRA |
| Plaintiff, | |
| v. | |
| BODYFRIEND USA, INC. NORTH AMERICA and BODYFRIEND USA, CO., LTD., | |
| Defendants. | |
| BODYFRIEND USA, INC. | **COUNTERCLAIMS** |
| Plaintiff, | |
| v. | |
| HITRONS TECH, INC., JOHN AND JANE DOES 1-10, and XYZ CORPORATIONS 1-10, | |
| Defendants. | |

**INTRODUCTION**

1.     This is an action stemming from a distribution agreement between Bodyfriend USA and Hitrons (the "Parties").

2.     As evidenced by Plaintiff's Complaint and Defendant's Answer and Affirmative Defenses above, there is no dispute that there exists an enforceable contract between the Parties.

3.     Rather, the dispute primarily concerns which contract's terms govern the relationship between the Parties.

4.     Plaintiff claims that this matter is governed by a verbal contract that was later supplemented by a proposed written agreement dated and signed by Defendant on September 4,

2019, which Hitrons paradoxically claims it both "signed off on" as well as provided "proposed revisions" thereto.

5.     Meanwhile, Bodyfriend USA's position is that this matter is governed solely by a subsequent Dealership Agreement sent to Hitrons on or about October 7, 2019, which sought to incorporate Hitrons's voiced concerns while maintaining Bodyfriend USA's bottom line requirements.

6.     Importantly, Hitrons did not outright reject any of the terms in Bodyfriend USA's counter proposal, and the Parties continued to conduct business together in conformity thereunder, thereby demonstrating mutual acceptance of the contract through performance and course of conduct until June 2021, when Bodyfriend USA discovered that Hitrons had been violating a material and hotly negotiated term of their agreement by surreptitiously advertising outside of the agreement's limited geographic scope.

7.     Thereafter, Bodyfriend USA further discovered that Hitrons began engaging in disseminating public and demonstrably false advertisements and statements to customers regarding the quality of Bodyfriend USA's products, in an attempt to sabotage Bodyfriend USA's market.

## FACTS APPLICABLE TO ALL COUNTS

8.     Bodyfriend USA is a global healthcare products company, holding many exclusive patents pertaining to their high-end massage chairs and other luxury products marketed towards healthcare-conscious consumers.

9.     As the manufacturer and purveyor of high-end luxury products, Bodyfriend USA has a strong interest in protecting its brand name, such that it must remain selective in partnering with re-distributors of its products.

10.     Bodyfriend USA has flagship stores in 4 countries, including Korea, France, Canada, and the United States.

11.     In the United States, Bodyfriend USA operates five stores in California, one store in Georgia, one store in New Jersey, and maintains a dealership presence in numerous other states including New York, Virginia, Florida, Texas, and Illinois.

12.     Defendant Hitrons is a home electronics reseller that retails refrigerators, mattresses, massage chairs, and other home appliances throughout New Jersey, New York, Maryland, and most recently, Virginia.

13.     Defendants "John and Jane Does" are individual persons, the identities of which are presently unknown, who may have benefited economically with respect to the Dealership Agreement, controlled or directed the actions of Defendant Hitrons in any manner with respect to the Dealership Agreement, or otherwise respectively own the various Hitrons stores located in the geographic areas contemplated by the Dealership Agreement.

14.     Defendants "XYZ Corporations" are corporate entities, LLCs, or other forms of business entities, the identities of which are presently unknown, that may have benefited economically with respect to the Dealership Agreement, controlled or directed the actions of Defendant Hitrons in any manner with respect to the Dealership Agreement, or otherwise respectively own the various Hitrons stores located in the geographic areas contemplated by the Dealership Agreement.

15.     On or around November 2018, Bodyfriend USA and Hitrons entered into negotiations to have Hitrons act as an authorized dealer of Bodyfriend USA massage chair products in the New Jersey and New York marketplaces.

16.     On or around December 2018, Bodyfriend USA and Hitrons entered into a handshake dealership or distribution agreement, which resulted in Hitrons receiving its first order of Bodyfriend USA products in March 2019.

17.     Following a breach by Hitrons of the December 2018 oral agreement, Bodyfriend USA proposed a written agreement with Hitrons on or about September 4, 2019 (hereinafter "First Contract").

18.     Importantly, the First Contract contained stipulations that:

    a.      Hitrons would maintain a clean and tidy showroom space;

    b.      Hitrons's massage chair lineup would contain only products from Bodyfriend USA and Furniture For Life ("FFL");

    c.      Hitrons would provide monthly sales reports of Bodyfriend USA products on a store-by-store basis;

    d.      Hitrons would have an expected sales target of 60 units per month over a 3-month moving average;

    e.      Hitrons would follow all Unilateral Minimum Advertised Price requirements;

    f.      Hitrons would refrain from "sabotage advertising" and from advertising at all outside its then-current geographic market, particularly with respect to newspaper or media advertisements in the Virginia marketplace;

    g.      Hitrons would refrain from expanding its market presence outside its stores then located in New Jersey, New York, Massachusetts, Pennsylvania, and Maryland; and

h.     Bodyfriend USA would offer exclusivity to Hitrons in the Korean language market for the New York metro area, but would develop all other markets with FFL and would not offer exclusivity to Hitrons in its other satellite stores outside the New York metro area.

19.    Thereafter, Hitrons submitted written comments and proposed revisions to the First Contract, but failed to sign the contract.

20.    Nonetheless, Hitrons did not outright reject any particular term in the First Contract, and the parties' mutual acceptance of the First Contract was demonstrated through mutual performance under its terms and their respective courses of conduct.

21.    On or about October 7, 2019, Bodyfriend USA sent a revised agreement to Hitrons which reflected Bodyfriend USA's partial acceptance and counterproposal to Hitrons's proposed changes (hereinafter, "Second Contract" or "Dealership Agreement").

22.    In addition to the original terms in the First Contract, the Second Contract made further stipulations, including but not limited to:

a.     Adhering to the contractual terms while meeting certain higher sales targets would result in further extensions of the exclusivity period;

b.     Unless Hitrons first discussed expansion into the Virginia market with Bodyfriend USA, any advertisements that reached the Virginia market would specify that the Hitrons store was located in Ellicott City in Maryland;

c.     Hitrons would be permitted to open more stores in its then-current geographic market (NJ, NY, MA, PA, MD), but would be required to first discuss with Bodyfriend USA when considering expansion into the Virginia market;

      d.     Bodyfriend USA would also offer exclusivity to Hitrons in the Asian market in Hitrons's then-current geographic market (NJ, NY, MA, PA, MD); and

      e.     In the event of contract termination, Hitrons would be permitted to continue selling its Bodyfriend USA floor display units and other inventory for a three-month period following termination, and Bodyfriend USA would continue to make mechanical parts available to Hitrons for purchase in order to service customers who had already bought Bodyfriend USA massage chairs.

23.    Thereafter, the parties continued to conduct business together throughout this period of time in conformity with the Second Contract, with Hitrons raising no specific objections or rejections as to any particular term, thereby demonstrating mutual acceptance of the contract through performance and course of conduct.

24.    Indeed, this arrangement continued largely without incident for a period of nearly two years, until June 2021 when Bodyfriend USA representatives made a site visit to the Hitrons store in Maryland.

25.    During this time, Bodyfriend USA discovered that Hitrons had, on more than one occasion, surreptitiously begun running full-page Korean-language newspaper advertisements for its products in the metropolitan Washington D.C. area, without advertising that its store was located in Ellicott City, Maryland, in direct violation of the First and Second Contracts.

26.    Upon Bodyfriend USA's demand that Hitrons retract its newspaper advertisements in the metropolitan Washington D.C. area, Hitrons claimed that it was not possible to stop the newspaper advertisement from being published, but that Hitrons would cease any such further activity in the Maryland, Virginia, and D.C. area going forward.

27.     Through its licensed dealers in the Virginia area, Bodyfriend USA also discovered that Hitrons had begun plans to open a store in Centreville, Virginia, to sell Bodyfriend USA products, without having first consulted with Bodyfriend USA.

28.     Bodyfriend USA further discovered that Hitrons had surreptitiously entered into a "sub-dealer contract" with a third-party store, Ellicott Healing Village, without Bodyfriend USA's prior authorization.

29.     Upon information and belief, Hitrons did not make Ellicott Healing Village aware that there existed an exclusivity agreement between Bodyfriend USA and Hitrons that would foreclose such an arrangement.

30.     Upon Bodyfriend USA's demand, Hitrons removed its Bodyfriend USA products which were already on display at Ellicott Healing Village on or about July 4, 2021.

31.     Recognizing the breaches of the Dealership Agreements committed by Hitrons, Bodyfriend USA sent an offer to renew and restate the Second Contract to Hitrons on or about June 24, 2021 (the "June 2021 Offer").

32.     Although the parties continued to negotiate in good faith for several weeks, on or about July 13, 2021, Hitrons suddenly began claiming that there were many complaints about Bodyfriend USA products from its customers, and began demanding mechanical parts from Bodyfriend USA to service said complaints.

33.     Up until this point, Bodyfriend USA had not received notice of any such complaints, and was surprised by Hitrons's claims.

34.     Somewhat conveniently, the day afterward, on July 14, 2021, Hitrons began demanding one-sided and unacceptable contractual terms, to which Bodyfriend USA advised that if Hitrons's goal was to forego renewal of the Dealership Agreement, Hitrons would be

contractually entitled to a three-month wind-up period to sell off its remaining inventory, and that Bodyfriend USA would thereafter be entitled to buy-back and collect any remaining unsold inventory.

35.     Thereafter, Bodyfriend USA began scaling back its business interactions with Hitrons due to the lack of a new Dealership Agreement in place.

36.     During the fall of 2021, Bodyfriend USA became aware of an interview-style infomercial that was being broadcast on Korean-language radio programs, in which Hitrons stated and/or strong implied that Bodyfriend USA products were inferior to other massage chair products in Hitrons's inventory.

37.     Furthermore, around that same time period, Bodyfriend USA dealers in New Jersey and New York began reporting that they had received customer comments stating that Hitrons employees were disparaging Bodyfriend USA products during in-store visits.

38.     Due to the lack of a standing Dealership Agreement in place, on October 25, 2021, Bodyfriend USA formally terminated the business relationship and requested that Hitrons remove its products, images, and logos from Hitrons's website and store displays.

39.     Notwithstanding, as of July 2022, Bodyfriend USA products were still being displayed in Hitrons stores.

40.     Upon information and belief, Hitrons began advertising its plans to open a new store in Centreville, Virginia, while it was still under the restrictions of the Dealership Agreement between the parties.

41.     Hitrons's website now lists a store in Centreville, Virginia.

## FIRST COUNT
### (Breach of Contract)

42.     Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

43.     A contract exists between the parties.

44.     Bodyfriend USA fully performed under the terms of the contract.

45.     Pursuant to the Second Contract, under whose terms the parties conducted business for nearly two years, Hitrons was prohibited from engaging in the following behavior:

        a.     Sabotage advertising;

        b.     Advertising in the Virginia market without specifying its store was in Ellicott City, Maryland;

        c.     Expanding to the Virginia market without first consulting and receiving approval from Bodyfriend USA;

        d.     Breaching the exclusivity provisions of the contract; and

        e.     Continuing to sell Bodyfriend USA products after the stipulated three-month period following termination of the Dealership Agreement.

46.     Notwithstanding the above conditions, Hitrons materially breached the contract's terms by:

        a.     Disparaging Bodyfriend USA products both in-store and in media advertisements;

        b.     Advertising in the Virginia marketplace without specifying that its store was in Ellicott City, Maryland, as well as by advertising that Hitrons would be opening a store in Centreville, Virginia;

      c.      Opening a store in Centreville, Virginia, without first consulting with Bodyfriend USA;

      d.      Surreptitiously negotiating a third-party sub-dealer contract with Ellicott Healing Village in Ellicott, Maryland, to sell Bodyfriend USA products without Bodyfriend USA's knowledge or permission; and

      e.      Continuing to sell Bodyfriend USA products after the stipulated three-month period following termination of the Dealership Agreement.

47.    By virtue of the foregoing, Hitrons breached the Dealership Agreement with Bodyfriend USA and said breach has directly and proximately caused damage to Bodyfriend USA.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

      a.      Compensatory damages;

      b.      Consequential damages;

      c.      Reasonable attorneys' fees and costs;

      d.      Lawful interest; and

      e.      For such other relief as the Court deems equitable and appropriate.

## SECOND COUNT
### (Breach of Implied Duty of Good Faith and Fair Dealing)

48.    Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

49.    By virtue of the contract between the parties, an implied covenant of good faith and fair dealing also existed between the parties.

50.     Implicit in the contract was the understanding that Hitrons would not circumvent its obligations by contracting with other parties to sell or re-sell Bodyfriend USA products without Bodyfriend USA's permission.

51.     Hitrons breached this duty by engaging in bad-faith surreptitious negotiations with Ellicott Healing Village to act as a third-party sub-dealer despite the clear exclusivity provisions in the Dealership Agreement and the express wishes of Bodyfriend USA to maintain such an exclusive dealership arrangement.

52.     Hitrons further breached this duty by surreptitiously planning to open a store in Virginia without first discussing with Bodyfriend USA its intent to do so and by contemporaneously engaging in advertisements that did not specify that its store was located in Ellicott, Maryland, in order to increase attention toward its upcoming Virginia store, despite its contractual obligations otherwise.

53.     Hitrons engaged in such bad faith conduct for the purpose of circumventing its obligations under the Dealership Agreement and depriving Bodyfriend USA of the rights and benefits thereof.

54.     As a direct and proximate result of Hitrons's conduct, Bodyfriend USA has suffered and continues to suffer harm.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

      a.     Compensatory damages;

      b.     Consequential damages;

      c.     Reasonable attorneys' fees and costs;

      d.     Lawful interest; and

      e.     For such other relief as the Court deems equitable and appropriate.

## THIRD COUNT
### (Tortious Interference with Actual and Prospective
### Business Relations)

55.     Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

56.     Bodyfriend USA has developed and maintained an actual and prospective business relationship with its customers that promise a continuing reasonable expectation of future economic benefit to Bodyfriend USA.

57.     Hitrons was aware that Bodyfriend USA's ongoing business relationship with FFL and other merchants had similar arrangements to exclusively distribute Bodyfriend USA products in markets outside its own.

58.     Indeed, although the Second Contract provided that Hitrons would be the exclusive purveyor of Bodyfriend USA products in its own then-existing geographic markets in New Jersey, New York, Massachusetts, Pennsylvania, and Maryland, the same contract also provided immediately afterward that "Bodyfriend USA [would] develop all other markets with FFL and is not offering [Hitrons] exclusivity in the satellite stores [Hitrons] operate[s] in markets outside [the] NY metro area."

59.     The Second Contract also requires that Hitrons stay within its own geographic markets and first discuss with Bodyfriend USA any intention to expand into other markets, particularly Virginia.

60.     Notwithstanding the above, Hitrons surreptitiously schemed to advertise within the Virginia market without complying with its contractual obligations to specify that its store was located not in Virginia but rather in Ellicott City, Maryland, and further schemed to enter into the

Virginia market and sell Bodyfriend USA products without first obtaining Bodyfriend USA's permission or justification to do so.

61.     Hitrons intentionally, maliciously, and improperly interfered with, and continues to interfere with Bodyfriend USA's relationship with FFL by entering into the Virginia marketplace and disrupting Bodyfriend USA's exclusive distribution arrangements.

62.     As a direct and proximate result of Hitrons's conduct, Bodyfriend USA has suffered and continues to suffer harm to its business, reputation, and good will.

63.     To that effect, as a result of Hitrons's actions, Bodyfriend USA's product sales in New Jersey and New York fell from nearly $2 million spread over 600 units from January 2020 to June 2021, to approximately $550,000 spread over 150 units from July 2021 to December 2022.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

     a.     Compensatory damages;

     b.     Consequential damages;

     c.     Reasonable attorneys' fees and costs;

     d.     Lawful interest; and

     e.     For such other relief as the Court deems equitable and appropriate.

**<u>FOURTH COUNT</u>**
**(Tortious Interference with Actual and Prospective Economic Advantages)**

64.     Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

65.     As set forth above, Hitrons and its employees engaged, and continue to engage in defamatory and disparaging behavior directed toward prospective and likely customers of Bodyfriend USA products.

66.     In particular, Hitrons's Korean-language radio program commercials were directed toward middle-aged and senior Korean-speaking adults, which are core consumer demographics shared by both Korean-language radio programs and Korean-branded massage chairs.

67.     Similarly, Bodyfriend USA received customer reports that Hitrons was disparaging Bodyfriend USA products in their store to the same customers who were seriously considering purchasing Bodyfriend USA products at a store that, up until recently, had been given exclusive distribution rights to such products.

68.     Accordingly, Bodyfriend USA clearly had a reasonable expectation of economic advantage that Hitrons intentionally, maliciously, and improperly interfered with without justification to do so.

69.     As a direct and proximate result of Hitrons's conduct, Bodyfriend USA has suffered and continues to suffer harm to its business, reputation, and good will.

70.     To that effect, as a result of Hitrons's actions, Bodyfriend USA's product sales in New Jersey and New York fell from nearly $2 million spread over 600 units from January 2020 to June 2021, to approximately $550,000 spread over 150 units from July 2021 to December 2022.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

a.     Compensatory damages;

b.     Consequential damages;

c.     Reasonable attorneys' fees and costs;

d.     Lawful interest; and

e.     For such other relief as the Court deems equitable and appropriate.

## FIFTH COUNT
### (Trade Libel)

71.     Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

72.     During the fall of 2021, Bodyfriend USA became aware of an interview-style infomercial that was being broadcast on Korean-language radio programs, in which Hitrons stated and/or strong implied that Bodyfriend USA products were inferior to other massage chair products in Hitrons's inventory.

73.     Furthermore, around that same time period, Bodyfriend USA dealers in New Jersey and New York began reporting that they had received customer comments stating that Hitrons employees were disparaging Bodyfriend USA products in-store.

74.     Such statements were and continue to be denigrating to Bodyfriend USA's reputation; demonstrably false and defamatory on their face; published and/or disseminated to third parties without permission; and attributable to Hitrons's negligent, reckless, and/or intentional behavior.

75.     Such statements also directly and proximately caused likely customers of Bodyfriend USA products to instead purchase other non-Bodyfriend USA products or otherwise refrain from purchasing Bodyfriend USA products.

76.     As a direct and proximate result of Hitrons's conduct, Bodyfriend USA has suffered and continues to suffer harm to its business, reputation, and good will.

77.     To that effect, as a result of Hitrons's actions, Bodyfriend USA's product sales in New Jersey and New York fell from nearly $2 million spread over 600 units from January 2020 to June 2021, to approximately $550,000 spread over 150 units from July 2021 to December 2022.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

     a.     Compensatory damages;

     b.     Consequential damages;

     c.     Reasonable attorneys' fees and costs;

     d.     Lawful interest; and

     e.     For such other relief as the Court deems equitable and appropriate.

## SIXTH COUNT
**(Product Disparagement)**

78.    Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

79.    The statements made by Hitrons and its employees, both on-air and personally directed toward customers who were seriously considering purchasing Bodyfriend USA's products, were and continue to be demonstrably false allegations, made either knowingly or recklessly without regard for the truth.

80.    Such statements were made derogatorily and disparagingly toward Bodyfriend USA's products, and were of a kind calculated to prevent others, such as potential customers, from dealing with Bodyfriend USA or purchasing Bodyfriend USA's products.

81.    Such statements indeed played a material and substantial part in leading others from dealing with Bodyfriend USA or purchasing Bodyfriend USA's products.

82.    Such statements were further made maliciously, and, upon information and belief, with the intent to re-direct otherwise customers of Bodyfriend USA products toward other product offerings in Hitrons's stores, as a result of Hitrons's own dissatisfaction with the governing contractual terms.

83.     As a direct and proximate result of Hitrons's conduct, Bodyfriend USA has suffered and continues to suffer harm to its business, reputation, and good will.

84.     To that effect, as a result of Hitrons's actions, Bodyfriend USA's product sales in New Jersey and New York fell from nearly $2 million spread over 600 units from January 2020 to June 2021, to approximately $550,000 spread over 150 units from July 2021 to December 2022.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

a.     Compensatory damages;

b.     Consequential damages;

c.     Reasonable attorneys' fees and costs;

d.     Lawful interest; and

e.     For such other relief as the Court deems equitable and appropriate.

## SEVENTH COUNT
### (Specific Performance)

85.     Bodyfriend USA repeats the allegations contained in the foregoing paragraphs as though set forth at length herein.

86.     As set forth above, as a purveyor of high-end luxury healthcare products, Bodyfriend USA has a strong interest in upholding its brand name and protecting its products from distribution by unauthorized sellers.

87.     As further set forth above, the Dealership Agreement provided, *inter alia*, that Hitrons would be authorized to act as Bodyfriend USA's exclusive redistributor in certain geographic markets for a specified period of time, and that upon termination of the agreement, Hitrons's "remaining floor display[] units and inventory [could] be sold and displayed for an additional 3 months following the date of the termination."

88.     The parties' long-standing regular course of dealing demonstrates that all parties had a clear, definite, and precise understanding of the material terms of the contract, and that both sides mutually assented to conducting business under those terms.

89.     More specifically, the parties' understanding and intent in contracting was that Hitrons would be authorized to sell Bodyfriend USA products only for the period of time that their Dealership Agreement remained in effect, and that following the stipulated three-month period following termination of the agreement, Hitrons would no longer be permitted to re-sell Bodyfriend USA products.

90.     It was understood and agreed to that after that three-month period under the Dealership Agreement, Hitrons was required to return any and all remaining unsold inventory to Bodyfriend USA in exchange for the monies it paid for those units.

91.     Bodyfriend USA stands ready and willing to perform its contractual obligations.

92.     Because Bodyfriend USA has a strong interest in protecting its brand name from a distributor that has readily demonstrated animosity and disdain for Bodyfriend USA products, specific performance is appropriate since monetary damages cannot be readily ascertained and there is no other adequate remedy at law.

WHEREFORE, Bodyfriend USA demands judgment against Hitrons for;

    a.      Specific performance of the contract between the parties;

    b.      An Order enjoining Hitrons from further re-selling Bodyfriend USA products and requiring Hitrons to return all remaining unsold inventory of Bodyfriend USA products to Bodyfriend USA in exchange for a refund of monies originally paid for such units;

    c.      Compensatory damages;

    d.      Consequential damages;

    e.      Reasonable attorneys' fees and costs;

    f.      Lawful interest; and

    g.      For such other relief as the Court deems equitable and appropriate.

**JURY DEMAND**

Demand is hereby made for a trial by jury as to all issues.

**LOCAL CIVIL RULE 11.2 CERTIFICATION**

Pursuant to L. CIV. R. 11.2, the undersigned counsel for Defendant hereby certifies that this matter in controversy is not the subject of any action pending in any other court, or of any pending arbitration or administrative proceeding.

I hereby certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

Dated: June 14, 2024

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Attorneys for Defendant, Bodyfriend USA

*/s/J. John Kim*
_____
**J. John Kim**
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200

## <u>CERTIFICATION OF SERVICE</u>

I certify that this Answer with Separate Defenses and Counterclaims was filed and served within the time permitted by the Federal Rules of Civil Procedure and the Local Civil Rules.  Filing and service were effectuated by electronically filing this Answer with Affirmative Defenses with the Court's CM/ECF system, which will automatically send email notifications of such filing to all attorneys of record and will likewise be available electronically to any attorneys of record who subsequently appear in this matter.

Dated: June 14, 2024

**PASHMAN STEIN WALDER HAYDEN, P.C.**
Attorneys for Defendant, Bodyfriend USA


*/s/J. John Kim*
**J. John Kim**
21 Main Street, Suite 200
Hackensack, NJ 07601
(201) 488-8200